# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| HEZEKIAH WHITFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )    No.: 24-cv-4060-JES |
| | ) |
| KASEY KRAMER, et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* while confined at the Hill Correctional Center ("Hill"), filed a complaint alleging violations of the Americans with Disabilities Act ("ADA")[1], and Eighth Amendment deliberate indifference under 42 U.S.C. §1983. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Plaintiff files a three-count count complaint against the State of Illinois; the Illinois Department of Corrections ("IDOC"); the Hill Warden, Doris Williams, alternately referred to as Jane Doe #1; the Jane Doe #2 Hill Healthcare Coordinator; Kasey Kramer, N.P.; Grievance Officer Jason Garza; Administrative Review Board ("ARB") member, Lisa Weitekamp; and

---

[1] Americans with Disabilities Act, 42U.S.C. § 12101, *et seq.*

Wexford Health Sources, Inc. Plaintiff alleges in Count I, that all Defendants violated his rights under the ADA; in Count II, that all Defendants exhibited deliberate indifference to his serious medical needs; and in Count III, that Wexford and IDOC had unconstitutional policies of which all Defendants, save Kramer, N.P., were aware and to which they turned a blind eye.

## FACTS

Plaintiff complains that he was subject to a 28-month delay before receiving adequate treatment for his severe sleep apnea. On April 2, 2021, Plaintiff reported that his cellmate told him that Plaintiff frequently stopped breathing while asleep. On April 7, Plaintiff was referred for a diagnostic sleep study, a referral which was denied at collegial review. It appears that the issue languished, and in 2022, Plaintiff filed various related grievances. These were denied by Defendant Grievance Officer Garza, the appeals denied by Defendant ARB member Weitekamp, and the denials affirmed by Warden Doris Williams. As noted, Plaintiff refers to Warden Williams both by name and by the Jane Doe #1 designation. The clerk is asked to correct the caption to replace "Jane Doe #1" with "Doris Williams."

The referral underwent a second collegial review on April 8, 2022, and was approved. There was a further delay in the sleep study being done as Plaintiff was informed by Defendant Kramer, NP, that IDOC only had two sleep study machines which had to be shunted between the various institutions. The sleep study was not done until April 4, 2023, when Plaintiff was transferred to the Graham Correctional Center. On July 27, 2023, he was finally provided a CPAP device. Plaintiff states that as a result of the delay, he experienced sleep deprivation, headaches, and anxiety. He requests $2,000,000 in compensatory damages.

# ANALYSIS

Title II of the ADA applies to prisons and forbids discrimination against persons with disabilities. *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 913 (N.D. Ill. 2009). To successfully allege a violation, Plaintiff must plead: "[1] that he is a 'qualified individual with a disability,' [2] that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was 'by reason of' his disability." *Id*. at 913–914. Disability has been defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Equal Employment Opportunity Comm'n v. Charter Communications, LLC*, 75 F.4th 729, 733 (7th Cir. 2023) (quoting 42 U.S.C. § 12102(1)). Under Title II, a public entity must make reasonable accommodations for a qualified individual with a disability unless the requested modifications would "fundamentally alter the nature of the services, program, or activity." *Phipps*, 681 F. Supp. 2d at 920 citing *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004). Plaintiff asserts that sleep apnea is a qualified ADA disability and that Defendants denied him access to an ADA-covered activity, sleeping.

The Seventh Circuit has found that sleep apnea may qualify as a disability if it severely affects a major life activity. *Feldman v. Olin Corp.*, 692 F.3d 748, 754 (7th Cir. 2012) (denying summary judgment as plaintiff had established "a genuine dispute of material fact that he was disabled by a substantial, severe, and long-term limitation on his ability to sleep."). *See Edwards v. Dart*, No. 21-5665, 2022 WL 3543474, at *7 (N.D. Ill. Aug. 17, 2022) (finding that severe

sleep apnea was a qualifying disability and that it substantially limited the major life activity of sleeping).[2]

In *Edwards*, the court found that the defendants' failure to supply a CPAP machine violated the ADA. The court reasoned that this caused the plaintiff "to miss sleep, while nondisabled detainees (who are able to breathe and sleep without a CPAP machine) do not miss sleep." *See also Zepeda v. Wexford Health Sources, Inc.*, No. 24-818, 2024 WL 3819405, at *3 (S.D. Ill. Aug. 14, 2024) (finding that the confiscation and delayed return of the plaintiff's CPAP device stated an ADA claim). However, as noted in *Zepeda*, "individual employees of IDOC cannot be sued under the ADA." *Id*; *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). As a result, Latoya Hughes, the current Acting Director will be added as the sole defendant for the ADA claim. This claim is DISMISSED as to all other Defendants.

In Count II, Plaintiff asserts a § 1983 claim that all Defendants were deliberately indifferent to his sleep apnea. However, this claim cannot proceed as to IDOC, the State of Illinois, and the Department of Corrections as they are not "persons" amenable to suit under § 1983. *Purnell v. Illinois Dep't of Corr.*, No. 20-641, 2020 WL 5038589, at *2 (S.D. Ill. Aug. 26, 2020) ("Plaintiff cannot maintain his suit against IDOC because it is a state agency. The Supreme Court has held that 'neither a State nor its officials acting in their official capacities are 'persons' under § 1983.") (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); and *Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001) ("Eleventh Amendment bars suits against

---

[2] *Edwards* noted that the ADA Amendments Act of 2008 broadened the standard for what constitutes an impairment. "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. at §3, (citing Pub. L. No. 110-325 and the 29 C.F.R. § 1630.2(j)(1)(i) implementing regulations)).

states in federal court for money damages")). IDOC and the State of Illinois are DISMISSED as to Count II.

The Court will now consider this claim as to the remaining Defendants; Warden Williams, Healthcare Coordinator Jane Doe #2, Kasey Kramer, N.P., Grievance Officer Jason Garza, Administrative Review Board ("ARB") member, Lisa Weitekamp, and Wexford Health Sources, Inc. While Plaintiff pleads deliberate indifference against Warden Williams and Health Care Administrator Jane Doe # 2, he fails to allege that either individual was aware of his sleep apnea and refused to take action. *See Fields v. Liberty Healthcare Corp., Inc.*, No. 23-2515, 2025 WL 251158, at *3 (7th Cir. Jan. 21, 2025) ("Liability under § 1983 requires the personal involvement of each defendant in the alleged constitutional deprivation.") (citing *Est. of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017)). Personal involvement cannot be predicated merely on a defendant's "supervisory role over the other defendants." *Id*. (citing *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017)).

While Plaintiff pleads that Nurse Practitioner Kramer was aware of his sleep apnea, his only claim against her is that she told him there were only two sleep testing machines in all of IDOC and there would be a wait before his study would be done. Plaintiff does not plead that Kramer had the authority to have him tested earlier, or send him elsewhere for testing, or otherwise explain what she could have done under the circumstances.

Plaintiff's claims against Grievance Officer Garza, Warden Williams, and ARB member Weitekamp are based only on the denial of his grievances and appeals. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). An individual does not become

5

liable for an alleged constitutional violation merely by denying a grievance. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (rejecting that "anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself…Only persons who cause or participate in the violations are responsible.")

Wexford, unlike the State and its agencies, is amenable to suit under § 1983. "Private contractors that provide medical services to prisoners are treated like municipalities for purposes of § 1983 claims." *Johnson v. Illinois Dep't of Corr.*, No. 19-4888, 2024 WL 4368129, at *4 (N.D. Ill. Sept. 30, 2024) (quoting *Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 2016) and citing *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017)). However, Wexford only has potential liability if it had an unconstitutional policy, custom, or practice that was "the 'moving force' behind the deprivation of constitutional rights,". *See Teesdale v. City of Chicago,* 690 F.3d 829, 833 (7th Cir. 2012) (discussing *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (quoting *Estate of Sims v. County of Bureau,* 506 F.3d 509, 517 (7th Cir. 2007)). Plaintiff's allegations against Wexford will be considered in the context of the Count III *Monell* claim.

The Count II deliberate indifference claim is dismissed in its entirety, with leave to replead. If Plaintiff repleads, he is to plead the particulars as to those individuals to whom he complained about his sleep apnea and their responses.

In Count III, Plaintiff alleges *Monell* claims, that Wexford, and perhaps IDOC, promulgated unconstitutional policies that caused him injury. A *Monell* claim has three required elements: "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force'

behind the constitutional injury." *Weaver v. Kelley*, No. 21-203, 2023 WL 8701073, at *6 (N.D. Ill. Dec. 15, 2023) (quoting *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019)). As previously noted, Plaintiff may not bring a § 1983 claim for money damages against the State of Illinois and IDOC, so they are DISMISSED from Count III. However, Plaintiff's claim against Wexford, based on the alleged unconstitutionality of Wexford's collegial review policy, may proceed.

Plaintiff also fails to state a Count III *Monell* claim against Warden Williams or the Jane Doe #2 Hill Healthcare Coordinator as he does not allege that either of these individuals had policy-making authority at Wexford. *See Weaver*, 2023 WL 8701073, at *6; *Cosby v. Rodriquez*, 711 F. Supp. 3d 983, 1009 (N.D. Ill. 2024) ("*Monell* liability extends to any 'official policy, widespread custom, or action by an official with policy-making authority'" (quoting *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016), in turn quoting *City of Canton v. Harris,* 489 U.S. 378, 379 (1989)).

**IT IS THEREFORE ORDERED:**

1. The clerk is to replace the "Jane Doe #1" designation with "Doris Williams."

2. The Count I ADA claim case will proceed against Acting IDOC Director Latoya Hughes in her official capacity and is DISMISSED as to all other Defendants. The Clerk is to add Acting IDOC Director Latoya Hughes to the caption as the sole Count I Defendant.

3. The Count II deliberate indifference claim is DISMISSED in its entirety with leave to replead within 30 days. If Plaintiff repleads he is to identify the document as an Amended Complaint that must stand on its own without reference to a prior pleading. If Plaintiff does not replead, this case will proceed as to the Count I and III claims only.

4. The Count III *Monell* claim will proceed as to Wexford only.

5. The State of Illinois is DISMISSED with prejudice. Defendants Williams, Jane Doe #2, Kramer, Garza, and Weitekamp are DISMISSED without prejudice, subject to Plaintiff repleading.

6. Plaintiff's motion for status [5], is rendered MOOT by this Order.

7. The Clerk is directed to send to send Defendants Hughes and Wexford, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

8. If any Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If any Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

10. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed.

Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

11. Once counsel has appeared for Defendants, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendant is not available, Plaintiff will be notified and instructed accordingly.

12. Counsel for Defendants are hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the depositions.

13. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF DEFENDANTS FAIL TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON DEFENDANT AND WILL REQUIRE

THAT DEFENDANTS PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).


ENTERED:  January 28, 2025


                                              s/James E. Shadid
                                          JAMES E. SHADID
                                     UNITED STATES DISTRICT JUDGE